UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERNATIONAL SHIP
REPAIR AND MARINE
SERVICES, INC.,

     Plaintiff,

v.                                    Case No.  8:25-CV-25-1631-KKM-AAS

HERALD ADONAI
(Formerly B 215),

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff International Ship Repair and Marine Services, Inc. (ISR), moves the court for an order directing an interlocutory sale of Defendant Vessel, Herald Adonai – one 1999 60.93s meter Deck Cargo Pontoon bearing IMO Number 8636386 and MMSI Number 657532000 (the Vessel). (Doc. 33). Defendant Herald Adonai opposes the motion. (Doc. 35).

I.     **BACKGROUND**

ISR and Herald Marine & Energy, Ltd. (Herald Marine), the owner of the Vessel, entered into an agreement whereby ISR would provide a berth for the Vessel. (Doc. 1-1). The parties further agreed that Herald Marine would

1

pay for the Vessel's dockage beginning August 10, 2024. (Doc. 33-1, ¶ 3). The intent was that Herald Marine would send a team to transport the Vessel to its home port in Nigeria. (*Id.*). Herald Marine never removed the Vessel from ISR's facility. (*Id., ¶* 4).

On June 23, 2025, ISR filed its complaint asserting a claim in rem against the Vessel arising from unpaid dockage fees. (Doc. 1). The court entered an Order granting ISR's Motion to Serve as Substitute Custodian for the Vessel. (Doc. 10). ISR formally assumed that role when the U.S. Marshal arrested the Vessel on July 1, 2025, and handed custody over to ISR. (Doc. 2-2). Since that time, through March 19, 2026, the Vessel had accrued $832,409.36 in *custodia legis* costs. (Doc. 33-1, ¶ 6)

ISR requests an interlocutory sale of the Vessel under Supplemental Rule E(9)(a). (Doc. 33). The Vessel opposes the motion and argues that ISR failed to make repairs, which were a condition precedent to the Vessel's removal under the parties' agreement. (Doc. 35). The Vessel also states that it has engaged in settlement efforts and took steps to remove the Vessel, but was unable to do so. (*Id.*).

## II.    LEGAL STANDARD

Rule E(9)(a) of the Supplemental Rule for Admiralty or Maritime Claims

and Asset Forfeiture Actions provides:

> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
>> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>>
>> (B) the expense of keeping the property is excessive or disproportionate; or
>>
>> (C) there is an unreasonable delay in securing release of the property.

Fed. Supp. R. E(9)(a)(i).

Under Supplemental Rule E(9)(a)(i), a party moving for a vessel's sale "need only demonstrate that one of [the Rule's] conditions is present to justify an interlocutory sale of a vessel." *20th Century Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1437 (M.D. Fla. 1997). "Because Supplemental Rule E(9) provides for interlocutory sales, it does not require, or even mention, the resolution of the merits of any particular claim; instead, the Rule focuses entirely on avoiding the recognized complications associated with maintaining a vessel under arrest." *Regions Bank v. Motor Yacht ROYAL INDULGENCE*, No. 3:10cv100/LAC/EMT, 2010 WL 4595792, at *3 (N.D. Fla. Oct. 13, 2010)

(internal quotation marks omitted), *report and recommendation adopted*, No. 310-cv-100/LAC/EMT, 2010 WL 4595729 (N.D. Fla. Nov. 4, 2010). Significantly, "[t]he interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983).

The sale of the property must be made "by the marshal or a deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interest." Fed. Supp. R. E(9)(b). The proceeds of such sale must be paid forthwith into the court's registry to be disposed of according to law. *Id.*

## III. ANALYSIS

ISR argues that the second and third criteria of Fed. Supp. R. E(9)(a)(i) are applicable and, thus, its motion for interlocutory sale of the Vessel should be granted. That is, the Vessel's value is deteriorating to the point that ISR will be unable to recover its damages, and there has been an unreasonable delay in securing the release of the Vessel from arrest. (Doc. 33).

### A.     Deteriorating Value

The second prong of Supplemental Rule E(9)—as noted above—permits the interlocutory sale of a vessel where "the expense of keeping the property is excessive or disproportionate." Fed. Supp. R. E(9)(a)(i)(B). In addressing this element, "[c]ourts often weigh the costs [of maintaining a vessel] against the value of the vessel or the amount of the claims against the vessel." *Naval Logistic, Inc. v. M/V Family Time*, No. 23-22379-Civ-Scola, 2024 WL 828124, at *3 (S.D. Fla. Feb. 27, 2024) (internal quotation marks and citation omitted), *aff'd sub nom.* No. 24-13172, 2025 WL 1733999 (11th Cir. June 23, 2025).

Here, from July 1, 2025, through March 19, 2026, the Vessel has accrued $832,409.36 in *custodia legis* costs. (Doc. 33-1, ¶ 6). As Herald Marine allegedly owed ISR $840,857.62 at the time of arrest, the total allegedly due by Herald Marine at this time exceeds $1,673,266.98. That amount is increasing by $2,544.00 per day, which is a reasonable rate.[1] (*Id.*, ¶ 5). The Vessel is an aging barge, and before Herald Marine, the only entities expressing interest in it were scrap dealers. (*Id.,* ¶ 7).

Considering the substantial expenditures required to store the Vessel and the boat's diminished value, ISR satisfies the second prong of

---

[1] That amount of $2,544.00 per day is less than the rate that Port Tampa Bay charges for berthing for a similarly sized vessel. (Doc. 33-1, ¶ 5).

5

Supplemental Rule E(9). *See Naval Logistic, Inc.*, 2024 WL 828124, at *3 (concluding that a $4,000.00 monthly cost to maintain a boat worth $99,000.00 was "disproportionate"); *Turner v. Neptune Towing & Recovery, Inc.*, No. 8:09-cv-1071-T-27AEP, 2010 WL 11651427, at *3 n. 4 (M.D. Fla. Dec. 30, 2010) (ruling that a monthly maintenance cost of roughly $2,300.00 was "excessive and/or disproportionate" for a vessel worth approximately $85,000.00).

### B.    Unreasonable Delay

The third prong of Supplemental Rule E(9)—as noted above—authorizes the interlocutory sale of a boat where "there is an unreasonable delay [by the vessel owner] in securing release of the property." Fed. R. Civ. P. Supp. Admiralty Rule E(9)(a)(i)(C). Courts have deemed this threshold to be met where "[a]t least four months" have transpired since the arrest of the vessel. *Regions Bank v. M/V MAXX B*, No. CV 1:22-00365-KD-MU, 2023 WL 205249, at *5 (S.D. Ala. Jan. 17, 2023) (collecting cases); *see also Turner*, 2010 WL 11651429, at *2 ("A motion for an interlocutory sale is not typically granted until enough time has passed to allow defendants to provide a bond to secure release of the vessel. As a general rule, defendants are given at least four months to bond a vessel absent some other considerations.") (internal quotation marks and citations omitted).

Here, the U.S. Marshal arrested the Vessel on July 1, 2025. Over 10 months have elapsed since the arrest. As stated above, a delay of four or five months is the generally recognized threshold for justifying an interlocutory sale order due to unreasonable delay. See, e.g., *Regions Bank*, 2023 WL 205249, at *5 (deeming a seven-month delay to be adequate under the third prong of Supplemental Rule E(9)); *20th Century Fox Film Corp.*, 992 F. Supp. at 1438 (finding an eight-month delay to be unreasonable); *M.D. Moody & Sons, Inc. v. McLaren*, No. 3:11-cv-1242-J-32JBT, 2012 WL 13136843, at *2 (M.D. Fla. July 30, 2012) ("[T]he passage of seven months since the time of the Endeavor's arrest amounts to an unreasonable delay in securing the release of the vessel."), *report and recommendation adopted*, No. 3:11-cv-1242-J-32JBT, 2012 WL 13136840, at *1 (M.D. Fla. Nov. 15, 2012).

The Vessel has been under arrest well beyond the threshold typically used for determining an undue delay. As a result, the vessel is accumulating additional custodial fees that will have to be paid after sale. Thus, ISR also satisfies the third prong of Supplemental Rule E(9).

## IV.   CONCLUSION

Accordingly, it is **RECOMMENDED** that ISR's motion for interlocutory sale of the vessel (Doc. 33) be **GRANTED**, and the court enter an order stating

7

the following:

(1)      The United States Marshal for the Middle District of Florida shall sell the Vessel, which is more particularly described as Herald Adonai – one 1999 60.93s meter Deck Cargo Pontoon bearing IMO Number 8636386 and MMSI Number 657532000, her engines, tackle, apparel, appurtenances, etc., at a public auction for the highest price that can be obtained.

(2)      The public auction shall take place within thirty (30) days of the issuance of the Court's Order at a date and time acceptable to the United States Marshal or at the Marshal's office located on the Fourth Floor of the Samuel M. Gibbons Courthouse, 801 North Florida Avenue, Tampa, Florida 33601.

(3)      ISR shall give notice of the date, time, and place of the sale to (i) the Vessel's owners and all known lien holders via mail or Federal Express at the owners' address(es) listed on the return of service and via the electronic court filing system; and (ii) the public-at-large by advertising same at least once per week for two successive weeks in the Tampa Bay Times, a newspaper of general circulation within this District, the first advertisement in the publication to be at least seven (7) days before the date of the Court-ordered sale; and the second publication to be at least three (3) days before the date of the sale per Section 5(q) of the Middle District of Florida's Admiralty and

8

Maritime Practice Manual (Practice Manual).

(4)     The Unites States Marshal shall require at the Court-ordered sale that the highest bidder, deposit with the United States Marshals for the Middle District of Florida ten percent of the bid price and the remaining purchase price within three (3) days or, if an objection to the sale is received, three (3) days after the confirmation of the sale of the Vessel pursuant to Section 5(r) of the Practice Manual.

(5)     The United States Marshal shall pay into the registry of the United States District Court for the Middle District of Florida any and all monies received as a result of the sale, and the parties who have asserted claims or liens to such proceeds, including the Defendant here, shall be provided an opportunity to present and argue their case regarding priority and entitlement to such proceeds.

(6)     The United States Marshal shall prepare such documents and reports that may be necessary for the confirmation of the sale by the United States District Court.

(7)     The confirmation hearing shall be held at the United States District Court for the Middle District of Florida or remotely, on a date and time to be established by the Court, which shall be after the objection period

provided for in Section 5(r)(7) of the Practice Manual.

(8)     ISR shall inform any successful bidder that is not a party to this case of the date and time of the confirmation hearing.

**ENTERED** in Tampa, Florida, on May 1, 2026.

_Amanda Arnold Sansone_

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.